TOWN OF CORDOVA v. VILLAGE OF LE SUEUR CENTER.

November 13, 1899.

Nos. 11,916—(68).

### Support of Poor—Application for Town Aid.

In an action to recover for expenditures made by the plaintiff town for the support of a pauper whose legal settlement was in the defendant village, *held*, that the fact that the application to the town for aid was not under the oath of two credible persons, as provided by Sp. Laws 1881 (Ex. Sess.) c. 221, is no defense to the action.

### Change of Residence—Settlement—Meaning of "Pauper."

Where a person having a legal settlement in one town removes to another town or village, he may acquire a new settlement in the latter, although at the time of his removal, and thereafter, he was not self-supporting, but was aided or supported by private charity,—at least, provided he has never received public aid from the town of his former settlement.

Action in the district court for Le Sueur county to recover $427.68 and interest for the support of two paupers. The case was tried before Cadwell, J., who directed a verdict for $409.35 in favor of plaintiff; and from a judgment entered pursuant to the verdict, defendant appealed. Affirmed.

*Charles C. Kolars*, for appellant.

*G. S. Ives* and *M. R. Everett*, for respondent.

MITCHELL, J.

One Campbell and his wife having applied to plaintiff for public support, the supervisors, being of the opinion that the applicants had no legal settlement in their town, but had such settlement in defendant village, caused the applicants to be conveyed to the village. The village authorities refused to receive or aid them, and caused them to be returned to the town, and notified the town supervisors that the village refused to relieve or support them. Thereafter the town was compelled to, and did, expend a considerable sum of money for the relief and support of the Campbells, and this action was brought to recover the amount from the village. Upon the close of the evidence the court directed a verdict for the plaintiff. Upon this appeal the village makes two points only:

1. The first is that the court erred in admitting in evidence the application of the Campbells to the board of town supervisors for aid, because it was not under oath of two credible persons, as provided by Sp. Laws 1881 (Ex. Sess.) c. 221, § 2. This provision was evidently designed for the protection of the supervisors who are called upon to furnish aid, and perhaps, also, as a precautionary measure to protect the town against unfounded applications. But it could never have been intended as a jurisdictional prerequisite to the authority of the supervisors to grant public aid. If so, an applicant for aid, who for any reason was unable to procure the required oaths, might perish under the very eyes of the town authorities. The only effect, in our judgment, of granting aid without such oaths, would be that the supervisors would act at their peril, and, if their action was questioned, the burden would be on them to prove that the case was in fact a proper one for giving public relief. The propriety and necessity, in fact, of granting relief in this case are not questioned.

2. For the purpose of proving that the Campbells had never acquired a legal settlement in the village, the defendant offered certain evidence tending to prove, as is claimed, that at the time the Campbells came into the village to reside, and ever afterwards, they were not self-supporting, but were supported by the private charity of a friend; it being claimed that the law is that a pauper cannot by a change of residence acquire a new settlement, under the poor laws.

We have no such provision in our statutes. The only provision of which we are aware on the subject of legal residence or settlement under our laws for the relief of the poor is G. S. 1894, § 1954. Assuming that the common law (if there is any common-law rule on the subject) is that a pauper cannot, by changing his place of residence, acquire a new residence or settlement, within the meaning of the poor laws, and that this rule is not changed or affected by section 1954, supra, still the term "pauper," in that connection, must be construed as meaning only persons receiving aid and assistance from the public under the provisions made by law for the support and maintenance of the poor. In legislation the word has long since acquired this precise and technical meaning. See Opin-

ion of Judges of Supreme Court, 11 Pick. 537. While in England and New England this matter of the legal settlement of paupers is very fully and specifically covered by express statutes, we have not found a statute or a decision which makes the settlement turn upon the question whether the person was in fact poor, or was aided by the private charity of friends or others. But, in every instance where the question was whether a person had acquired a new settlement by a change of residence, it was made to depend upon the fact whether at the time of his removal he was receiving public aid from the town from which he removed, or had subsequently received it. See Inhabitants of Oakham v. Inhabitants of Sutton, 13 Metc. (Mass.) 192, and cases cited.

The usual method provided for protecting towns against persons not yet technically paupers, but liable to become such, from gaining a legal settlement, is by warning them to depart, and, if they fail to depart, by deporting them to the towns from which they removed. Our statute does not seem to give a county or town any authority to move in that direction until the person applies for public aid. But that is a matter for the legislature. And inasmuch as a person must reside a full year in a county or town in order to acquire a legal settlement under our statute, if his pauperism is at all imminent at the time of his removal, in the vast majority of cases the application for his support or relief will be made before he acquires a settlement. Hence counties and towns are not left so unprotected against the immigration or importation of prospective paupers as defendant's counsel assumes. If the question of legal settlement is left to be determined upon oral evidence as to a person's actual financial circumstances, and whether he was wholly self-supporting, or had been assisted by friends or others at the time of or prior to his change of residence, municipalities would be left without any definite and certain rule by which they could conveniently and promptly ascertain the legal settlement of an applicant for aid. The only authority cited by defendant's counsel is Town of Saukville v. Town of Grafton, 68 Wis. 192, 31 N. W. 719. There are some expressions in the opinion in that case which might seem to favor counsel's contention, but when the facts are examined it will be found that nothing decided

supports defendant's contention. Moreover, that case involved the construction of an express statute on the subject. There was no error in excluding the evidence.

Judgment affirmed.